IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DONNA L. ISLER,

    Plaintiff,

v.                                                            CASE NO. 1:10-cv-00178-MP-GRJ

BANKERS LIFE AND CASUALTY COMPANY,

    Defendant.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 29, Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law in Support. The plaintiff failed to respond in a timely manner under N.D. Fla. Loc. R. 7.1(C), but did provide various documents and evidentiary materials prior to the advisement date, pursuant to N.D. Fla. Loc. R.56.1. Thus, the Court has considered these documents and evidentiary materials but did not consider the arguments contained in the untimely response. For the reasons set out below, Defendant's Motion for Summary Judgment (Doc. 29) is due to be **GRANTED IN PART** and **DENIED IN PART**.

### I. BACKGROUND

Plaintiff Donna Isler entered into a long-term care insurance policy with defendant Bankers Life and Casualty Company in October of 1998. See Exhibit A to defendant's Statement of Facts, Doc. 30, attach. #1, at p. 1. Among other things, the policy states that the insurer would pay "the actual charges incurred for ... the Maximum Weekly Benefit amount for the total of all Part II Home Health Care." Id. at p. 5 (page 8 of the PDF). This duty to pay, however, was subject to certain conditions for benefit

eligibility.

The condition that is relevant to this case is the following: "[b]efore benefits will be payable for a Family Member's Covered Expenses; (1) a Licensed Health Care Practitioner must certify that expenses for Qualified Long-Term Care Services are needed because a Family Member is Chronically Ill..." Id. at 4 (p. 7 of pdf).  In order to be "chronically ill," an insured must have been "certified by a Licensed Health Care Practitioner within the preceding 12 month period as:

1. being Functionally Incapacitated for a period expected to last at least 90 days; or
2. having a Cognitive Impairment."

Id.  There is no issue of cognitive impairment in this case, so the insured would have to satisfy the "functionally incapacitated" prong to be eligible for benefits.

The policy defines "functional incapacity" as follows:

"Functional Incapacity" means one's inability to engage in two or more of the activities of adult daily living, listed below, without the Hands-on Assistance or Standby Assistance of another person. Such Functional Incapacity must be expected to last at least 90 days. The activities of adult daily living used to measure Functional Incapacity and their definitions are:

"Bathing" - to wash oneself by sponge bath; or in either a tub *or* shower, including the task of getting into or out of the tub or shower.

"Continence" - the ability to maintain control of bowel and bladder function: or, when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for a catheter or colostomy bag).

"Dressing" - putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs.

"Eating" - feeding oneself by getting food into the body from a table, a plate, cup or other receptacle or by a feeding tube or intravenously.

"Toileting" - getting to and from the toilet, getting on and off the toilet, and

>performing associated personal hygiene.
>
>"Transferring" - moving into or out of a bed, chair or wheelchair.
>
>"Hands-on Assistance" means physical assistance without which one would be unable to perform an activity of adult daily living.
>
>"Standby Assistance" means another person must be within arm's reach of an individual to prevent, by physical intervention if necessary, injury while performing an activity of adult daily living.
>
>"Substantial Supervision" means continual supervision (which may include cuing by verbal prompting, gestures or other demonstrations) by another person that is necessary to protect a Cognitively Impaired person from threats to his or her own health or safety.

Id.

On December 4, 2008, the insurer sent a letter to the insured indicating that her request for home health care benefits was approved from July 17, 2008, to March 17, 2009. Exhibit B to Complaint, found at Doc. 1, attach. 1, p. 27 of the pdf. However, the letter also indicated that her eligibility for benefits would be reassessed before extending benefits beyond March 17, 2009. Id.

During 2009, the insurer found the insured no longer eligible for home health care benefits. A letter, dated May 27, 2009, seemed to suggest that her health care provider at the time, Marian Johnson, had not sent proper documentation to the insurer to certify that the insured was receiving eligible benefits from Ms. Johnson. See Exhibit C to Complaint, found at Doc. 1, attach. 1, p. 28 of the pdf. Later, in November of 2009, the insured hired Comfort Keepers, who the parties appear to agree is a Licensed Health Care Practitioner as defined by the policy. Complaint, Doc. 1, attach. 1, ¶ 25.

At first, Comfort Keepers failed to certify that the expenses for its long-term care

services were needed by the insured for hands-on or standby assistance with two activities of adult daily living.  Id. at ¶ 27; see also Exhibit G to defendant's Statement of Facts, Doc. 30, attach. 7, p. 2 of pdf (Plan of Care prepared by Comfort Keepers on November 10, 2009, including handwritten note, "per conversation with the client, Comfort Keepers will not be providing personal care!" (underline and exclamation point in original)).  Thus, the insurer continued to deny coverage.  See, e.g., Exhibit D to Complaint, Doc. 1, attach. 1, p. 33 of pdf.  (letter from defendant of June 15, 2010, rejecting coverage because the insured was not considered "functionally incapacitated" for a period expected to last at least 90 days.)

However, plaintiff has offered evidentiary material that, starting in January 2010, the invoices prepared by Comfort Keepers for each week and submitted to defendant, appear to show that hands-on or standby assistance with two activities of adult daily living was provided by Comfort Keeper to the insured.  See id. at Exhibit E, found at p. 30-31 of pdf.  Plaintiff has also offered deposition testimony of Rita Bennett, a corporate representative of defendant, who examined defendant's file on plaintiff and verified that defendant had received at least five reports from the licensed health care practitioner which indicated that the practitioner had provided hands-on or standby assistance with two activities of daily living on a regular basis.  Bennett Depo., Exhibit A to Doc. 36, pp. 6-7 of pdf.  Nevertheless, defendant has never resumed providing benefits to the plaintiff.

The plaintiff filed a five-count complaint in state court, which was removed to federal court.  Doc. 1.  In Count 1, the plaintiff asserts that defendant violated Fla. Stat. § 626.9541(1)(i)(3)(f) which defines the following as "an unfair method of competition or

unfair or deceptive act or practice":

> (3) Committing or performing with such frequency as to indicate a general business practice any of the following:...(f) Failing to promptly provide a reasonable explanation in writing to the insured of the basis in the insurance policy, in relation to the facts or applicable law, for denial of a claim or for the offer of a compromise settlement.

In Count 2, the plaintiff claims that defendant violated § 626.9541(1)(i)(3)(d) which defines the following as "an unfair method of competition or unfair or deceptive act or practice":

> (3) Committing or performing with such frequency as to indicate a general business practice any of the following:...(d) Denying claims without conducting reasonable investigations based upon available information.

In Count 3, the plaintiff charges a violation of § 624.155(1)(b)(1),[1] which provides that

> (1) Any person may bring a civil action against an insurer when such person is damaged...(b) by the commission of any of the following acts by the insurer: 1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for her or his interests.

Count 4 alleges breach of the insurance contract by defendant, and Count 5 argues that, by refusing to pay Comfort Keepers despite receiving invoices allegedly justifying payment, defendant tortiously interfered with the contract between Comfort Keepers and the plaintiff.

## II. STANDARD FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary

---

[1]The complaint refers to Fla. Stat. § 624.955(1)(b)(1), which does not exist. The Court assumes that plaintiff was referring to the civil remedy provisions found at Fla. Stat. § 624.155(1)(b)(1), which concerns the requirement to exercise good faith in settling insurance claims.

judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the non-moving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried.

### III. DISCUSSION

Defendant first argues on summary judgment that it properly denied benefits to plaintiff because she is not chronically ill under the policy. Since it properly denied benefits, the defendant concludes, it is not liable under Count 4 alleging breach of contract, and it is also not liable under Counts 1, 2 and 3, which allege violations of various Florida Statutes regarding the way in which it settled the plaintiff's claims.

The defendant admits that "[i]ndeed, the Comfort Keeper care notes provided for the Plaintiff from January 19, 2010 to April 1, 2010 state that Plaintiff received various levels of assistance with bathing and/or dressing. (Care Notes, Exh. K)", which would

constitute the required two activities of adult daily living. Doc. 29 p. 5. However, the defendant still urges the Court to find no genuine issue of material fact as to whether the plaintiff was eligible, arguing the following:

> the notes are inconsistent from day to day and are inconsistent with the plan of care developed by Comfort Keepers itself. (*Id*.; 01/14/10 Plan of Care, Exh. H). This inconsistency serves as further evidence that the Insured does not "need" services because she is not Chronically Ill. (Policy, Exh. A, p. 4).

Id. at p. 5. While this may be some evidence of a lack of need, the plaintiff has countered that evidence with documentary and testimonial evidence that tends to show the need for hands-on or standby assistance with two activities of adult daily living, in the form of the care reports and the deposition testimony of Ms. Bennett. Accordingly, summary judgment is not appropriate on this issue. Therefore, summary judgment is not appropriate for the reasons offered by defendant on Counts 1,2,3, and 4.

Defendant also seeks summary judgment on Count 5, plaintiff's tortious interference claim. In order to state a cause of action for tortious interference, a plaintiff must allege: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damages to the plaintiff as a result of the breach of the relationship. Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1127 (Fla.1985); Sec. Title Guarantee Corp. of Baltimore v. McDill Columbus Corp., 543 So.2d 852, 854 (Fla. 2d DCA 1989). Here, plaintiff has offered no evidence whatsoever of an intent by the insurer to interfere with the contractual relationship between Comfort Keepers and the insured. The failure to provide allegations or evidence of intent is fatal to this count. McKinney-Green, Inc. v. Davis, 606 So.2d 393, 397-398 (Fla. Ct. App. 1

Dist. 1992)("The gravamen of an action for tortious interference with a contractual relationship is the malicious interference by a third party with a contract between other persons, whereby one contracting party is induced to breach the contract to the injury of the other").  Summary judgment is therefore appropriate for the defendant on this claim.

Next, the Court agrees with the defendant that plaintiff's demand for damages for emotional distress must be rejected under Florida law.  First, the plaintiff herself may no longer even be seeking such damages, having answered the question "Are you claiming damages for emotional distress?" with "Not at this time." See Exhibit C to defendant's Statement of Facts, Doc. 30, attach. 3, p. 68 of depo., p. 11 of pdf. Additionally, the Florida Supreme Court recently explained the dichotomy of cases in which plaintiffs can recover emotional distress damages in negligence cases in Willis v. Gami Golden Glades, LLC, 967 So.2d 846 (Fla.,2007):

> In Florida, the prerequisites for recovery for negligent infliction of emotional distress differ depending on whether the plaintiff has or has not suffered a physical impact from an external force. If the plaintiff has suffered an impact, Florida courts permit recovery for emotional distress stemming from the incident during which the impact occurred, and not merely the impact itself.  If, however, the plaintiff has not suffered an impact, the complained-of mental distress must be "manifested by physical injury," the plaintiff must be "involved" in the incident by seeing, hearing, or arriving on the scene as the traumatizing event occurs, and the plaintiff must suffer the complained-of mental distress and accompanying physical impairment "within a short time" of the incident.

Id. at 849 (*quoting* Eagle Picher Industries, Inc. v. Cox, 481 So. 2d 517, 526 (Fla. 3d DCA 1985)).  Plaintiff has not alleged or provided evidence of any kind of physical impact or immediate manifestation of physical injury.  Likewise, in order to recover damages for intentional infliction of emotional distress, plaintiff would have to prove that "the conduct was outrageous...as to go beyond all bounds of decency, and to be

regarded as odious and utterly intolerable in a civilized community." Stewart v. Walker, 5 So.3d 746, 749 (Fla.App. 4 Dist.,2009). The alleged conduct in this case, even if proven, does not come close to rising to this level.

Finally, the Court must consider, sua sponte, whether plaintiff is premature in bringing Count 3, which seeks the statutory civil remedy under Florida Statutes § 624.155 for the insurer's alleged bad faith for failing to properly settle the claim. Under Florida law, a claim for bad faith against an insurer does not accrue and, therefore, is premature until insurance coverage has been determined. Vest v. Travelers Insurance Co., 753 So. 2d 1270, 1276 (Fla. 2000). See also Blanchard v. State Farm Mutual Automobile Insurance Co., 575 So. 2d 1289, 1291 (Fla. 1991) ("[A]n insured's underlying first-party action for insurance benefits against the insurer necessarily must be resolved favorably to the insured before the cause of action for bad faith in settlement negotiations can accrue."); Doan v. John Hancock Mutual Life Insurance Co., 727 So. 2d 400, 403 (Fla. Dist. Ct. App. 1999) (finding that the holding in Blanchard was not limited to cases involving uninsured motorist insurance and receding from a previous decision from the same Florida District Court of Appeal, in which it held to the contrary). Moreover, this rule has been applied even when recovery under the policy in the case is not conditioned upon proof of a third-party's liability. Although both *Vest* and *Blanchard* stemmed from claims against the insured by third-party tortfeasors, the rule in *Vest* and *Blanchard* has not been limited to claims only involving proof of a third party's liability. To the contrary, the rule that bad faith claims are premature until liability under the first-party policy has been determined has been applied to a broad array of claims against insurers, including claims for failing to pay their insureds under

long term disability insurance policies,[2] collision benefits under an automobile policy,[3] damages to a building from a fire under a builder's risk policy,[4] and hurricane damages to a property under a property insurance policy.[5]

Here, Bankers Life claims that it is not required to pay under the policy because Ms. Isler does not meet the definition of chronically ill under the policy. Until a determination has been made that the insurer is liable on the subject policy it is simply premature for the insured to prosecute a claim for bad faith under § 624.155. The preferred approach for addressing a premature claim for bad faith is to abate the bad faith claim until the liability of the insurer under the policy has been determined, rather than dismissing the claim.[6] Accordingly, Count 3 should be abated until such time as the Court has determined whether the insurer is liable to pay under the subject policy for the claimed loss.

---

[2] Doan, 727 So.2d 400; *see also,* Fishkin v. The Guardian Life Insurance Company of America, 22 F.Supp.2d 1365 (S.D. Fla. 1998)("Plaintiff cannot assert his bad faith claim based on Guardian's denial of his claim ... until liability ... [has] been resolved on the underlying causes of action.").

[3] Allstate Insurance Co. v. Baughman, 741 So.2d 624 (Fla. Dist. Ct. App. 1999)

[4] Hartford Insurance Company v. Mainstream Construction Group, 864 So.2d 1270, 1272 (Fla. Dist. Ct. App. 2004)("We conclude that these claims [bad faith claims by an insured who seeks to sue his own insurance company] may only be brought after coverage and contractual issues between the insured and the insurer are resolved ... ").

[5] Liberty Mutual Insurance Company v. The Farm, Inc., 754 So.2d 865 (Fla. Dist. Ct. App. 2000).

[6] *See,* Mainstream Construction Group, 864 So.2d at 1273 ("The trial court should either dismiss count IV without prejudice or abate count IV pending resolution of the coverage issues"); Baughman, 741 So.2d at 626 (directing lower court to dismiss without prejudice or abate the bad faith claim until the breach of contract claim was resolved.)

## IV. RECOMMENDATION

It is respectfully **RECOMMENDED** that the defendant's Motion for Summary Judgment (Doc. 29) be **GRANTED IN PART** and **DENIED IN PART**, and this case set for pretrial conference.  Additionally, it is recommended that the bad faith claim in Count 3 be abated until resolution of the issues of liability under the policy.

**IN CHAMBERS** this 19th day of December, 2011.

*s/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

**Pursuant to Fed. R. Civ. P. 72(b)(2), a party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**